**Marilyn LESZCZYNSKI, as Personal Representative of the Estate of Brett James Gervasio; Emma Conroy; Maruchy Carriazo and her husband, Robert Carriazo and Patricia Downs and her husband, Robert E. Downs, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**ALLIANZ INSURANCE and Allianz Underwriters Insurance Company, foreign corporations, Defendants.**

No. 97–373–CIV–GOLD.

United States District Court, S.D. Florida.

Dec. 8, 1997.

Marilyn Leszcznski, pro se.

Steven K. Hunter, Miami, FL, for Plaintiffs.

Myron Shapiro, Miami, FL, for Defendants.

## ORDER GRANTING CLASS CERTIFICATION AND DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

GOLD, District Judge.

Plaintiffs, Marilyn Leszczynski, as Personal Representative of the Estate of Brett James Gervasio, Emma Conroy, Maruchy Carriazo and her husband, Robert Carriazo, individually and on behalf of all others similarly situated, have sought class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.[1]

### I. PROCEDURAL HISTORY

The plaintiffs filed their three-count Class Action Complaint in February, 1997, alleging subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1367. Plaintiffs seek declaratory relief and damages for personal injuries they sustained in automobile accidents in

---

1. When distinctions between individual plaintiffs are not necessary, all plaintiffs will be referred to collectively as "plaintiffs." Likewise, when distinctions between defendants are not necessary, they will be collectively referred to as "defendants."

which they were occupants of vehicles leased by Mercedes Benz Credit Corporation (MBCC). Plaintiffs contend that insurance policies issued by defendants provide medical payments, personal injury protection, and uninsured/underinsured motorist coverage for their injuries. On April 8, 1997, defendants served their Answer, Affirmative Defenses and Counterclaim. The Counterclaim seeks declaratory relief that no coverage is available to the individual plaintiffs under the policy in question. Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction as to Counts I and III. Following an initial status conference, the parties engaged in discovery. Plaintiffs' motion for class certification was filed May 20, 1997. Pursuant to the briefing schedule established by this Court, as well as subsequent motions for enlargement of time which altered the original schedule, the parties filed memoranda of law. The Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion raises three threshold legal issues, namely, subject matter jurisdiction (as set forth in their motion to dismiss), standing, and liability of Mercedes Benz Credit Corporation. Each issue is discussed separately below.

## II. SUBJECT MATTER JURISDICTION

Defendants Allianz Insurance and Allianz Underwriters move to dismiss Counts I and III of Plaintiffs' Class Action Complaint for lack of subject matter jurisdiction as to both the named and putative plaintiffs, pursuant to 28 U.S.C. § 1332 and Rule 12(h)(3) of the Federal Rules of Civil Procedure.

### A. THE COMPLAINT

The complaint filed by the lead plaintiffs asserts three counts for declaratory relief and one count for monetary damages. Jurisdiction is based on diversity. Count I seeks declaratory relief concerning Allianz Insurance Company's obligation to pay benefits pursuant to the Med Pay provision of its policy in limits up to $5,000. The plaintiffs propose that the Court certify a nationwide class composed of all occupants, nationwide, of Mercedes Benz Credit Corporation (MBCC) leased vehicles, who incurred, within three years of an accident, reasonable expenses for medical and funeral services as a result of bodily injury caused by an accident which occurred while they were occupants of an MBCC leased vehicle. Count I also seeks monetary damages in the form of unreimbursed expenses owed to Allianz insureds pursuant to the Med Pay provision of the policy. In Count II, plaintiffs seek a declaratory decree that they are entitled to uninsured/underinsured motorist benefits equal to the liability limits of the Allianz Insurance and Allianz Underwriters' policies, respectively $1,000,000 and $10,000,000. Plaintiffs' proposed subclass consists of all persons injured within the past five years, as a result of the alleged negligence of an uninsured/underinsured motorist, while occupying a MBCC leased vehicle registered or licensed in Florida. In Count III, plaintiffs seek a declaratory decree regarding Allianz Insurance Company's obligation to provide PIP or no-fault benefits in the amount of $10,000 pursuant to section 627.736, Florida Statutes. Plaintiffs propose a subclass consisting of all persons who sustained losses within the past five years, as a result of bodily injury, sickness, disease or death arising out of the ownership, maintenance or use of a MBCC leased vehicle registered and licensed in Florida.

Members within the Med Pay and PIP subclasses, individually, seek a maximum of $5,000 and $10,000 respectively. In order to invoke this Court's diversity jurisdiction, along with the mandate of complete diversity between the representative class members and the defendants, each class member must also claim an amount in controversy greater than $75,000. 28 U.S.C. § 1332. Plaintiffs recognize that class members cannot individually meet the jurisdictional threshold requirement of having $75,000 in controversy, and request this Court to exercise supplemental jurisdiction pursuant to 28 United States Code, section 1367, over the individual class members within the Med Pay [Count I] and PIP [Count III] classes.

### B. ANALYSIS

The Class Action Complaint seeks to invoke diversity jurisdiction in three counts under 28 U.S.C. sections 1332 (diversity jur-

isdiction) and 1367 (supplemental jurisdiction). Defendants concede that diversity of citizenship is present, and that plaintiffs' alleged amount in controversy as to Count II is in excess of the $75,000 jurisdictional threshold. Defendants move to dismiss only Counts I and III which respectively seek Med Pay benefits up to $5,000 each and PIP benefits of up to $10,000 each. Defendants first argue that the putative class plaintiffs' claims under Counts I and III may not be aggregated under *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), which held that each putative class plaintiff had to satisfy the amount in controversy, or be dismissed from the class action. Plaintiffs do not dispute *Zahn's* holding as applied, but contend that *Zahn* has been overruled by Congress through the enactment, in 1990, of the supplemental jurisdiction statute, 28 U.S.C. section 1367. Pursuant to this statute, plaintiffs

request this Court to exercise supplemental jurisdiction over the putative class members within the Med Pay and PIP classes. In turn, defendants urge this Court to consider and apply the legislative history of section 1367 which purportedly demonstrates that *Zahn* is still good law.

■ Whether section 1367 overruled *Zahn* has been the subject of much debate in the academic community[2] and among the courts[3]. The Eleventh Circuit has yet to rule on the issue.[4] Most of the district courts, including at least one within this Circuit[5], have held that *Zahn* remains good law after the enactment of section 1367. The two Circuits that have addressed the issue, however, have held that section 1367 overrules *Zahn, In re Abbott Laboratories,* 51 F.3d 524 (5th Cir.1995) and *Stromberg Metal Works v. Press Mechanical, Inc.,* 77 F.3d 928 (7th

**2.** *Compare* 1 James W. Moore et al., *Moore's Federal Practice* section 23.07[3][c] at 23–41 (1993) (legislative history makes clear that section 1367 was not intended to overrule *Zahn* ) with Herbert H. Newberg, *Class Actions* section 6.11 at 6–45 through 6–49 (legislative history may not be resorted to when text of statute is unambiguous; section 1367 unambiguously provides for supplemental jurisdiction in the *Zahn* scenario). *See also Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1045 n. 9 (3d Cir.1993) (citing various academic journals debating this issue).

**3.** *See Crosby v. America Online, Inc.,* 967 F.Supp. 257 (N.D.Ohio 1997) (finding that while 1367 is ambiguous, the legislative history proves that 1367 was not intended to affect the jurisdictional requirements of 1332); *Russ v. State Farm Mut. Auto. Ins. Co.,* 961 F.Supp. 808 (E.D.Pa.1997); *Borgeson v. Archer–Daniels Midland Co.,* 909 F.Supp. 709 (C.D.Cal.1995); *Waters v. Grosfeld,* 904 F.Supp. 616, 618 (E.D.Mich.1995); *Clement v. Occidental Chemical Corporation,* Civ. A. 94–1315, 1994 WL 479155 (E.D.La.1994); *Griffin v. Dana Point Condominium Ass'n,* 768 F.Supp. 1299, 1301 (N.D.Ill.1991); *Riverside Transp., Inc. v. Bellsouth Telecommunications, Inc.,* 847 F.Supp. 453, 455–56 (M.D.La.1994); *Stoumen v. Public Serv. Mut. Ins. Co.,* No. Civ. A 94–0233, 1994 WL 111355 (E.D.Pa. Mar. 30, 1994); *Hairston v. Home Loan and Inv. Bank,* 814 F.Supp. 180, 181 n. 1 (D.Mass.1993); *Mayo v. Key Financial Serv., Inc.,* 812 F.Supp. 277, 278 (D.Mass. 1993); *Averdick v. Republic Financial Serv., Inc.,* 803 F.Supp. 37, 45–46 (E.D.Ky.1992); *North American Mechanical Serv. Corp. v. Hubert,* 859 F.Supp. 1186, 1188 (C.D.Ill.1994) (non-class action); *cf. In re Brand Name Prescription Drugs*

*Antitrust Litigation,* 123 F.3d 599 (7th Cir.1997) (holding that under the plain language of 1367, as long as one named plaintiff meets the jurisdictional minimum, the other unnamed class members can piggyback on that plaintiff's claim pursuant to supplemental jurisdiction); *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928 (7th Cir.1996) (holding plain language of section 1367 allows for aggregation of separate and distinct claims thereby overruling *Zahn); Deep v. Manufacturers Life Ins. Co.,* 944 F.Supp. 358, 362 (D.N.J.1996) (holding section 1367 overruled *Zahn* ).

**4.** In *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1357 n. 9 (11th Cir.1996), the Eleventh Circuit recognized that "[S]ome dispute exists as to whether Zahn has been overruled by the recent passage of 28 U.S.C. section 1367(b) which would provide supplemental jurisdiction over class members' claims so long as one class representative meets the jurisdictional requirement.[citations omitted] We need not address this issue because we hold that the class claim for punitive damages may be considered in the aggregate when determining the amount in controversy."

**5.** See *Hooks v. Assoc. Fin. Servs. Co.,* 966 F.Supp. 1098 (M.D.Ala.1997) (holding that claims of class members may not be aggregated in determining whether the jurisdictional amount has been met); *Fountain v. Black,* 876 F.Supp. 1294 (S.D.Ga. 1994) (court stated it was "leaning" to determine that *Zahn* was not overruled by section 1367). Compare *Howard v. Globe Life Ins. Co.,* 973 F.Supp. 1412 (N.D.Fla.1996) (section 1367 unambiguously overruled *Zahn*).

Cir.1996).[6] In both cases, the courts concluded that the statute was clear and unambiguous and does not demand an absurd result. *In Re Abbott, supra,* 51 F.3d at 528 ("We cannot search legislative history for congressional intent unless we find the statute unclear or ambiguous. Here, it is neither"). *Stromberg, supra,* 51 F.3d at 528–529 ("We follow *Abbott Laboratories,* which has strong support from the statutory text ... When text and legislative history disagree, the text controls"). For essentially the same reasons set forth in *Abbott* and *Stromberg,* the Court holds that section 1367 overruled *Zahn.*

As previously mentioned, the *Zahn* Court held that in class actions based on diversity jurisdiction, each plaintiff in the class independently must satisfy the amount-in-controversy requirement or face the prospect of dismissal for want of jurisdiction, at least as to those claims that did not satisfy the amount-in-controversy requirement. In other words, *Zahn* forbade the exercise of supplemental jurisdiction over class members' state law claims that did not reach the jurisdictional amount in controversy.

In 1990, Congress enacted 28 U.S.C. section 1367, which provides, in pertinent part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of other parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20 or 24 of the Federal Rules of Civil Procedure, or as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

The structure of section 1367 is straightforward: section 1367(a) gives the courts supplemental jurisdiction over transactionally-related claims and section 1367(b) creates certain exceptions to the exercise of supplemental jurisdiction when the district court's original jurisdiction is based solely on diversity of citizenship. Significantly, class actions are not among the exceptions listed in section 1367(b) See *Abbott,* 51 F.3d at 524.

Defendants argue that the legislative history makes clear that Congress did not intend to overrule *Zahn* by enacting section 1367 because the section was not intended to affect the jurisdictional requirements of 28 U.S.C. section 1332 in diversity-only class actions, as those requirements were interpreted prior to *Finley.*[7] However, less fre-

---

**6.** An argument can be made to disregard the holding of *Stromberg* because it, unlike the present case, did not address supplemental jurisdiction in the context of a class action. In *Stromberg* there were only two plaintiffs, both of whom pressed transactionally-related claims. One plaintiffs claims exceeded $50,000, while the other plaintiffs claims did not. Prior to the enactment of section 1367, the rule in this situation paralleled the rule in *Zahn.* See *Clark v. Paul Gray, Inc.,* 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939) (court lacks supplemental jurisdiction to hear claim when one plaintiff's claims meet jurisdictional threshold, but other plaintiffs claims do not). The Seventh Circuit, in *Stromberg* held that section 1367 overruled *Clark.* Significantly, the Seventh Circuit adopted the Fifth Circuit's reasoning in *Abbott,* and specifically

noted its reluctance to create a conflict among the Circuits on a jurisdictional issue. *Stromberg,* 77 F.3d at 930. Therefore, *Stromberg,* while not addressing the precise issue before this Court, is nevertheless persuasive authority.

**7.** The impetus to codify the common law set of supplemental jurisdiction rules was generated by the Supreme Court's decision in *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). The *Finley* Court held that, when a claim arises under federal law, a federal court may not exercise jurisdiction over pendent parties absent a legislative grant of authority to do so. Prior to *Finley,* however, an explicit legislative grant was not thought necessary to exercise supplemental jurisdiction. See *In re Abbott Laboratories,* 51 F.3d at 524.

quently cited legislative history of section 1367 demonstrates that the Federal Courts Study Committee (FCSC), which recommended the enactment to Congress, informed Congress that *Zahn* made little sense from a policy standpoint. *In re Prudential Ins. Co. of Am.*, 962 F.Supp. 450, 504–505 (D.N.J.1997). The FCSC proposal, which is "fairly similar to the statutory language ultimately adopted," advised Congress to overrule *Zahn. Id.*

■ The legislative history cited by defendants, and referred to by a number of district courts, see footnote 3 *supra*, conflicts with the facial meaning and plain language of the statute. When, as here, the statutory language is unambiguous and does not demand an absurd result, it is the sole repository of Congressional intent. *West Virginia Univ. Hosps. Inc. v. Casey*, 499 U.S. 83, 99–100, 111 S.Ct. 1138, 1147–48, 113 L.Ed.2d 68 (1991); *Abbott, supra*, 51 F.3d at 528–29. The Eleventh Circuit has applied the same rules of statutory construction to give effect to the plain meaning of statutes. See *Consolidated Bank v. United States*, 118 F.3d 1461, 1464 (11th Cir.1997); *McNely v. Ocala Star Banner*, 99 F.3d 1068, 1075 (11th Cir. 1996); *Resolution Trust Corp. v. Fragetti*, 49 F.3d 715, 717 (11th Cir.1995). It is only "[i]n rare and exceptional circumstances [that a court] may decline to follow the plain meaning of a statute because overwhelming extrinsic evidence demonstrates a legislative intent contrary to the text's plain meaning." *Michetti Pipe Stringing v. Murphy Bros.*, 125 F.3d 1396, 1398 (11th Cir.1997). Based on the reasoning of the 5th and 7th Circuits, such a rare and exceptional circumstance has not been demonstrated. The clear language of the statute, even if omitting the class action from section 1367(b)'s list of exceptions was inadvertent, must therefore govern. See *Stromberg*, 77 F.3d at 931. Accordingly,

defendants' motion to dismiss on this ground must be denied.

Defendants next argue that the named plaintiffs fail to meet jurisdictional requirements in Counts I and II. They argue that reasonable attorneys' fees, along with the cost for equitable relief, cannot establish the $75,000 "matter in controversy" requirement for any single plaintiff within the Med Pay and PIP classes. See Defendants' Motion to Dismiss, page 14. In response, plaintiffs do not dispute defendants' argument, but instead contend that their claims in Counts I and III can be aggregated with Count II in order to establish the jurisdictional amount, where each has sought declaratory relief that he is entitled to uninsured motorist benefits equal to the liability limits of Allianz Insurance and Allianz *Underwriters* policy ($1,000,000 and $10,000,000 respectively).[8]

■ In 1969, the United States Supreme Court held that class plaintiffs cannot aggregate their individual claims in order to meet the jurisdictional dollar amount in controversy requirement of 28 U.S.C. section 1332. *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). The effect of *Snyder* is to require at least *one* class plaintiff to meet the federal jurisdictional amount. Here, the named plaintiffs do not seek to aggregate their claims with the other named plaintiffs to reach the jurisdictional amount; rather, they seek to aggregate their own non-qualifying claims with their *other* claim in the same class action complaint which *does* exceed the jurisdictional limit.

■ The Court concludes that, under 28 U.S.C. section 1332(a), the named plaintiffs' claims in Counts I and III, which do not meet the threshold amount, may be aggregated with their claims in Count II which do meet the threshold amount, and it is not required that each such claim against a de-

---

**8.** In Count II, Carriazo, Downs and Conroy contend that they are entitled to $1,000,000 in under insured motorist coverage under the underlying Aliens Insurance, while plaintiff Leszczynski contends that there is $10,000,000 in uninsured motorist coverage available under the excess policy. In a declaratory judgment action, the amount in controversy is measured by the value of the object of the litigation. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333,

347, 97 S.Ct. 2434, 2443–44, 53 L.Ed.2d 383 (1977). In the usual case of this kind, a court can determine the amount in controversy by reference to the face value of the policy. *See Doucet v. Travelers Ins. Co.*, 362 F.2d 263 (5th Cir. 1966); 14A Wright, Miller and Cooper, *Federal Practice and Procedure, section* 3710, pages 166–167. Evidently, defendants do not contest this proposition since no motion to dismiss has been filed against Count II.

fendant exceed $75,000. *Davis H. Elliot Co. v. Caribbean Utilities Co.,* 513 F.2d 1176, 1182 (6th Cir.1975) ("we need only note here that under 28 U.S.C. section 1332(a) a plaintiff can aggregate his causes of action against a defendant and is not required that each claim against a defendant exceed $10,000"); *Hales v. Winn–Dixie Stores,* 500 F.2d 836, 845–46 (4th Cir.1973) ("Hales may attempt to meet section 1332(a)'s $10,000 jurisdictional requirement by adding to his diversity claim under Count I the amount of the recovery he is seeking under Count II"). *See also* 5 Moore, supra, section 102.108[1] n. 3, section 106.47 at 106.

█ In addition, the Court has supplemental jurisdiction of such claims by virtue of Federal Rule of Civil Procedure 18 and section 1367(a). Section 1367(a) authorizes the exercise of supplemental jurisdiction over the "other claims" of named class members, namely those claims that fail to meet the amount in controversy requirement. Section 1367(a) unequivocally confers jurisdiction on the district court over "all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." In this case, even if the claims in Counts I and III fail to meet the jurisdictional requirement, they certainly form part of the same "case or controversy," [9] because these claims arise from the same common facts as those that meet the threshold amount in Count II.

Moreover, although section 1367(b) disallows 1367(a) supplemental jurisdiction over claims founded solely on diversity and joined by certain Rules of Federal Civil Procedure, specifically Rules 14, 19, 20, and 24, Federal Rule of Civil Procedure 18, which permits joinder of claims and remedies, is not among the enumerated sections. Under the maxim *expressio unius est exclusio alterius,* the presence of these exclusions and the absence

of Rule 18 on the list confirms the propriety of the exercise of supplemental jurisdiction in a Rule 23 class action where the named plaintiffs have other Rule 18 claims that fail to meet the jurisdictional threshold.

### III. STANDING

Defendants next contend that none of the plaintiffs have standing to assert their own individual claims of UM/UIM coverage. Regarding Gervasio and Conroy, defendants point out that they were passengers in MBCC vehicles when their accidents occurred. As passengers who did not reside in the household of MBCC's lessees, both Gervasio and Conroy are, at best, "Class II Insureds" under Florida law. According to defendants, Class II insureds, such as Gervasio and Conroy, have no standing to assert Allianz's failure to comply with the annual notice requirements of section 627.727(1), Florida Statutes.

█ Plaintiffs concede that Gervasio and Conroy are Class II insureds under Florida law, but correctly argue that, under *Travelers Insurance Co. v. Quirk,* 583 So.2d 1026 (Fla.1991), a Class II insured can raise a carrier's failure to comply with the notice requirements of the uninsured motorist statute as grounds for obtaining uninsured motorist coverage equal to the liability limits of a policy. Furthermore, in *Allianz Ins. Co. v. Halpenny,* 678 So.2d 368 (Fla. 3d DCA 1996), the Florida Third District Court of Appeal held that an insurer's failure to comply with the annual notice requirements of section 627.727(1), regarding the options available for UM/UIM coverage, resulted in such coverage being equal to the liability limits set forth in the policy. A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate court absent some persuasive indication that the

---

**9.** Defendants argue in a footnote that Counts I and II should be dismissed because the putative class members' claims are not so related to the named plaintiffs' claims as to constitute the same case or controversy. The Court rejects this argument because the basis for relief is alleged to arise out of the same operative facts. Both the named and putative plaintiffs' claims are based on the defendants' failure to provide benefits under the policy. All plaintiffs are alleged to

have been occupants of MBCC leased vehicles when they were involved in an accident. The complaint alleges that the obligation to pay each plaintiff arises from the same contract and that the defendants acted in similar fashion toward each of the plaintiffs. Thus issues of law and fact in this case are subject to generalized proof applicable to both the named and putative plaintiffs.

state's highest court would decide the issue otherwise. *Trumpet Vine Investments v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1120 n. 8 (11th Cir.1996). The defendants contend that there are several persuasive indicators that the Florida Supreme Court would decide *Halpenny* differently. After reviewing defendants arguments, the Court respectfully concludes otherwise, and finds that Gervasio and Conroy have requisite standing.[10]

## IV. CLASS ACTION CERTIFICATION

In this cause, plaintiffs seek certification of one nationwide class and two Florida subclasses. Under Fed.R.Civ.P. 23, plaintiffs must initially satisfy each of the four thresholds requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) questions of law or fact common to the class must exist ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy of representation"). Plaintiffs seeking to represent the class bear the burden of establishing that all four requirements have been met. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 721 n. 2 (11th Cir.1987); *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir.1984) (A class action may only be certified "if the Court is satisfied, after a rigorous analysis, that the prerequisites of Fed.R.Civ.P. 23(a) are met"). These prerequisites are mandatory and the failure to establish any one is fatal to a motion for class action certification.

In addition to meeting the four preliminary requirements in subdivision (a), Plaintiffs must then satisfy one of the elements of Fed.R.Civ.P. 23(b) in order for the lawsuit to be maintained as a class action. Plaintiffs assert that they satisfy Rule 23(b)(2) ("the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole"), and/or Rule 23(b)(3) (questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy).

The requirements listed in Rule 23 assume that the court has already determined that a class in fact exists and that the named plaintiffs are members of that class with jurisdiction and standing to sue. The jurisdictional and standing issues have previously been decided in favor of plaintiffs. The Court now addresses the remaining prerequisites.

■ The question of whether a class exists is a question of fact which ought to be determined on the basis of the circumstances of the case. *Barlow v. Marion County Hosp. Dist.*, 88 F.R.D. 619, 622 (M.D.Fla.1980). In this case, the class and subclasses are defined as follows:

THE CLASS: Nationwide occupants of a vehicle owned and leased by MBCC and entitled to reasonable expenses incurred, within 3 years of an accident, for necessary medical and funeral services as a result of bodily injury caused by said accident.

SUBCLASS A: Occupants of motor vehicles owned and leased by MBCC and registered or licensed within the State of Florida who have sustained damages within the past 5 years as a result of the alleged negligence of an uninsured/underinsured motorist.

SUBCLASS B: Occupants of motor vehicles owned and leased by MBCC who have sustained losses, within the last 5 years, as a result of bodily injury, sickness, disease or death arising out of the ownership, maintenance, or use of a MBCC leased vehicle registered and licensed within the State of Florida and who are thus entitled to recover the

---

10. The Court rejects without discussion the defendants' further arguments that Carrizo and Downs lack standing, and that Allianz cannot be liable to plaintiffs unless MBCC can be held liable.

benefits outlined in section 627.736, Florida Statutes.[11]

## A. RULE 23(a).

Defendants challenge class certification arguing that plaintiffs have failed to meet at least three of the Rule 23(a) requirements necessary for class certification as well as the additional requirement under Rule 23(b). For the following reasons, the Court finds that plaintiffs have met the requirements of Rule 23(a).

### 1. NUMEROSITY.

The "numerosity" requirement ensures that a lawsuit will proceed as a class action only if there is a real need for class certification. This requirement does not demand that joinder would be impossible, but rather that joinder would be extremely difficult or inconvenient. *Walco Investments, Inc. v. Thenen,* 168 F.R.D. 315, 324 (S.D.Fla. 1996) (impracticable does not mean impossible). Whether joinder of all of the class members would be impracticable depends on the circumstances surrounding the case and not merely on the number of class members. *CV Reit, Inc. v. Levy,* 144 F.R.D. 690, 696 (S.D.Fla.1992). Although there is no specific number of class members necessary to evidence the impracticability of joinder, the Court should consider the geographic dispersion of the class members, judicial economy and the ease of identifying the members of the class and their addresses. *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir.1986) (court looks to size of class, ease of identifying its members, facility of serving process on them, and their geographic dispersion); *Kreuzfeld A.G. v. Carnehammar,* 138 F.R.D. 594, 598–599 (S.D.Fla.1991).

To satisfy numerosity, plaintiffs must proffer some evidence of the number of members in the purported class, or at least a reasonable estimate of that number. *In re Amerifirst Secs. Litig.,* 139 F.R.D. 423, 427 (S.D.Fla.1991). The Court may "make common sense assumptions in order to find support for numerosity." *Evans v. United States Pipe & Foundry,* 696 F.2d 925, 930 (11th Cir.1983). It is not necessary that the precise number of class members be known. *Barlow v. Marion County Hosp. Dist.,* 88 F.R.D. 619, 625 (M.D.Fla.1980). The Eleventh Circuit has held that "while there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.' " *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986) (quoting 3B Moore's Federal Practice section 23.05(1) n. 7 (1978)).

But the party seeking certification may not rely on conclusory allegations that joinder would be impracticable, or on mere speculation regarding the size of the class. *Makuc v. American Honda Motor Co.,* 835 F.2d 389, 394 (1st Cir.1982) (in product liability case, plaintiff submitted affidavit that one in every 50 axles on motorcycle was defective, but numerosity was not established because plaintiff could not demonstrate, after two years of discovery, that even one other person was injured); *Fleming v. Travenol Labs., Inc.* 707 F.2d 829, 833 (5th Cir.1983) (numerosity requirement not met because plaintiff merely alleged that class was so numerous as to make joinder impracticable); *Marcial v. Coronet Ins. Co.,* 880 F.2d 954 (7th Cir.1989) (not error to fail to certify class consisting of all persons wrongly denied coverage under theft or vandalism provisions of automobile insurance policy since plaintiff could not rely on conclusory allegations that joinder would be impractical); *Barlow v. Marion County Hosp. Dist., supra,* 88 F.R.D. at 625 (mere speculation, bare allegations, and unsupported conclusions are inadequate). Moreover, statistical estimates are not presumptively reasonable. *Id.*

Plaintiffs allege in their Complaint that at any given time, MBCC leases in excess of 80,000 vehicles in the United States. Statis-

---

**11.** A comparison of the above definitions with the allegations concerning the named plaintiffs and the relief which they seek indicates that these definitions describe a class of persons similarly situated to the named plaintiffs. The definitions of the class and subclasses are taken directly from the allegations made with respect to each of the named plaintiffs. These findings are preliminary and do not displace the prerequisites to a class action more specifically set forth in Rule 23 and addressed below.

tics obtained from the Florida Department of Highway Safety and Motor Vehicles, indicate that in 1993, there were approximately 11,000,000 registered vehicles in Florida. (Exhibit 3 to the Complaint). The statistics further indicate that in 1993, there were 199,039 crashes and approximately 215,000 fatal and nonfatal injuries. Plaintiffs allege that this corresponds to approximately two injuries per 100 registered vehicles per year in the State of Florida. Plaintiff then assumes this statistical trend is applicable on a national basis to the total number of Mercedes Benz vehicles and concludes that approximately 1600 people per year are injured in accidents involving Mercedes Benz leased vehicles. Plaintiffs further allege that "It goes without saying" that a significant portion of the aforementioned sought medical treatment for which medical payments (Med Pay) coverage would be payable under the Allianz Insurance policy. Plaintiffs then argue that, taking the aforementioned statistics into consideration, along with the geographic disbursement of Mercedes Benz Credit Corporation leased vehicles, and the judicial economy which would be served by certification, the numerosity requirement is satisfied by this proposed class.

The degree of proof necessary to establish numerosity, and the distinction between pure speculation and common sense assumptions, is not entirely clear. 5 Moore, *supra*, section 23.22[3][b]. Several relevant factors, however, support plaintiffs' numerosity argument. First, some courts have held that where only injunctive or declaratory relief is pled, numerosity is relaxed so that even speculative or conclusory allegations are sufficient. *Goodnight v. Shalala*, 837 F.Supp. 1564, 1582 (D.Utah 1994); *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275–276 (10th Cir.1977); 5 Moore, *supra*, at 23–69. Second, the wide geographic dispersion of the class members both nationwide in Count I, and throughout Florida in Counts II and III, supports a finding of impracticability of joinder. Third, plaintiffs' Counts I and III individual claims involve only a small amount of damages and, therefore, it seems unlikely that they would file separate actions. Fourth, joinder of all claims as set forth in Counts I through III would be expensive, time-consuming and logistically unfeasible.

In this case, the plaintiffs' estimate of the number of purported class members borders between reasonable and speculative. Frankly, it is a close call at this juncture. But where the question on numerosity is a close one, a balance should be struck in favor of a finding of numerosity, as the court always has the option to decertify pursuant to Rule 23(c)(1). *Evans v. United States Pipe & Foundry Co.*, 696 F.2d 925 (11th Cir.1983). On balance, applying, the factors enumerated above, including the nature of the relief sought, the Court finds that the numerosity requirement has been met on a preliminary basis sufficient to warrant a conditional certification, subject to further evidence as to the actual number of potential class members who may fit the class definitions. Decertification may be appropriate, following further discovery and evidence, if it appears that plaintiffs are unable to identify how many of the 1,600 persons were denied coverage by Allianz. *See Siles v. ILGWU Nat'l Retirement Fund*, 783 F.2d 923, 930 (9th Cir.1986) (trial court's denial of plaintiff's motion for class certification was proper where plaintiff failed to present evidence of how many of the employees out of the total group of 31,000 were denied a pension); *Makuc v. American Honda Motor Co., Inc.*, *supra*, 835 F.2d 389 (numerosity not found because, although plaintiffs' alleged putative class contained 400–600 members, plaintiffs failed to establish that defendant took action in dispute with regard to any of these individuals).

### 2. COMMONALITY

The second prerequisite of Rule 23(a) is that there must be questions of law or fact common to the class. Although commonality and typicality are similar, each requirement serves different functions. The commonality requirement tests the sufficiency of the class itself, while the typicality requirement focuses on the relationship between the representative parties and the class as a whole. *Hassine v. Jeffes*, 846 F.2d 169, 177 n. 4 (3rd Cir.1988) (two requirements remain distinct because commonality

focuses on class claims and typicality focuses on claims of named plaintiffs). Commonality requires that there is at least one issue affecting all or a significant number of proposed class' members. *Stewart v. Winter*, 669 F.2d 328 (5th Cir.1982);[12] *Kreuzfeld v. Carnehammar*, 138 F.R.D. 594, 599 (S.D.Fla. 1991). It, however, does not mandate that all of the questions of law or fact raised by the case be common to all the plaintiffs. *Walco Invests., Inc. v. Thenen*, 168 F.R.D. 315, 324 (S.D.Fla.1996). The threshold for commonality is not high. *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir.1990). Factual differences between class members do not necessarily preclude a finding of commonality. *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D.Fla.1992). The claims actually litigated in the suit must be those fairly represented by the named plaintiffs. *Cox*, supra, 784 F.2d at 1557 (citing C. Wright & A. Miller Federal Practice and Procedure, section 763 at 603); see also *Johnson v. American Credit Co. of Georgia*, 581 F.2d 526, 532 (5th Cir.1978). Many courts have held that where a common scheme of deceptive conduct is alleged, common questions of law or fact will exist. See *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2nd Cir.1968); *Powers v. Stuart–James Co., Inc.*, 707 F.Supp. 499, 502 (M.D.Fla.1989); *Haitian Refugee Center, Inc. v. Nelson*, 694 F.Supp. 864, 877 (S.D.Fla.1988).

Plaintiffs claim that the insurance policies involved are the same in all material respects, were issued on a national basis, and contain clear, unambiguous and unconditional language. They also argue that Med Pay provisions are merely contractual agreements between the carrier and the insured; for this reason, such provisions are usually not impacted by statutory expressions. In contrast, defendants argue that certification of a national class based on alleged contractual breaches by Allianz would open a "pandora's box" requiring the court to construe the substantive contract and insurance laws of fifty states, thereby "swamping" the common issues. See *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir.1996).

Defendants' arguments may raise legitimate concerns. Even if defendants' policies do not incorporate state insurance law, Florida's choice of law rule provides that insurance contracts are governed by the law of the place where the contract was made, *Amica Mutual Insurance Co. v. Gifford*, 434 So.2d 1015, 1017 (Fla. 5th DCA 1983), and thus state insurance law would inevitably apply to claims under each contract. *Indianer v. Franklin Life Insurance Company*, 113 F.R.D. 595 (S.D.Fla.1986). Whether the Med Pay provisions would be governed by a disparate body of law remains to be seen. Certainly no state-by-state survey of law on this question was provided by either party. However, if the relevant law does not vary from state to state, the application of Florida law to nationwide class members claims would seem to be immaterial. Guidance on this matter is found in *Indianer* where Judge Marcus found that it would be folly to hold that breach of contract claims are never appropriate for nationwide class treatment.

While several courts have presumed the different state laws governing breach of contract claims to be varying and have denied class certification on that basis, see, e.g., *Schmidt v. Interstate Federal Savings & Loan Association*, 74 F.R.D. 423, 429 (D.D.C.1977) (denying certification where "it would likely be necessary to apply three separate and possibly inconsistent bodies of law to the breach of contract and unjust enrichment claim"); *McMerty v. Burtness*, 72 F.R.D. 450, 456 (D.Minn.1976) ("this claim presents issues of law which will vary from class member to class member, depending upon which state's common law of contracts governs"), they have not discussed how the relevant contract law might in fact differ.

It would be wrong to conclude that breach of contract claims are never appropriate for nationwide class treatment. "If breach of contract cases were meant to be excluded from the Rule's coverage, Congress would have so specified." *Kleiner v. First*

---

**12.** The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1982.

*National Bank of Atlanta,* 97 F.R.D. 683, 693 (N.D.Ga.1983). "When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such ." *Id.* at 692. Although the *Kleiner* court recognized that the loan agreements of class members would be governed by the laws of Virginia, Tennessee, South Carolina, Georgia, and North Carolina, it held that "the application of various state laws would not be a bar where, as here, the general policies underlying common law rules of contract interpretation tend to be uniform." Id. at 694. See also *Coca–Cola Bottling Co. v. Coca–Cola Co.,* 98 F.R.D. 254 (D.Del.1983) (allowing class treatment of the issue of interpretation of Bottler's Consent Decrees, even if other contract issues of law and fact which varied among class members had to be pursued separately).

*Id.* at 607. As long as the general policies underlying common-law rules of contract interpretation tend to be uniform, the rationale of *Kleiner* should control in the instant case. Whether the Med Pay provision has been breached appears to be a pure and simple question of contract interpretation which should not vary from state to state. Absent evidence to the contrary, it is unlikely that the application of Florida's rules of contract interpretation would be any different from any other state's rules or adversely affect any class member's substantive rights. In Florida, "a contract will be construed according to its own clear and unambiguous terms." *Cueto v. John Allmand Boats, Inc.,* 334 So.2d 30, 32 (Fla. 3d DCA1976). Furthermore, "in interpreting the words of a clearly-worded insurance policy ..., the court may not add or subtract language from face of instrument, and may not make a new contract for the parties where their intent can easily be inferred from the contract itself." *Quesada v. Director, Fed. Emergency Mgt. Agency,* 577 F.Supp. 695, 697 (S.D.Fla.1983). Accordingly, the claimed breach of Med Pay provisions is sufficiently common among nationwide class members for the Court to find, at this time, that requisite commonality has been satisfied.

### 3. TYPICALITY

In order to satisfy the "typicality" prerequisite of Rule 23(a), plaintiffs must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). The central inquiry in determining whether a proposed class has "typicality" is whether the "class representative [is] part of the class and 'possess[es] the same interest and suffer[s] the same injury' as the class members." *East Texas Motor Freight Sys. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974)). When ascertaining whether typicality exists, the district court is "to focus on whether the named representative's claims have the same essential characteristics as the claims of the class at large." *Appleyard v.. Wallace,* 754 F.2d 955, 958 (11th Cir.1985). A sufficient nexus is established if the claims or defenses of the class and the class representative[s] arise from the same event or pattern or practice and are based on the same legal theory. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984). Moreover, the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiff and other class members, unless the factual position of the representative markedly differs from that of other members of the class. *Id.*

Here, the named plaintiffs' claims are sufficiently "typical" of the claims of the class as a whole so as to satisfy Rule 23(a)(3) requirements. In their Complaint, plaintiffs allege a pattern and practice established by the defendants' failure to reimburse the representative parties in accordance with the governing policy provisions dealing with Med Pay, UM/UIM, and PIP. The relief sought is to declare that the defendants are obligated to reimburse and/or pay the representatives in accordance with policy provisions. Since it is also alleged that the named plaintiffs' claims arise from the same event or cause or conduct that give rise to the claims of the class members, i.e. while occupants of MBCC

leased vehicles, the named plaintiffs' claims are typical of the claims of the class, and the requirement is met. *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3rd Cir. 1992).

### 4. FAIR AND ADEQUATE PROTECTION

■ The fourth condition of Rule 23(a) provides that the representative party must "fairly and adequately protect the interests of the class." Under this criterion, the named plaintiffs must insure that (1) no conflict of interest exists between them and the putative class members and that (2) the action will be vigorously prosecuted. *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). The purpose of this requirement, as with Rule 23's other procedural mandates, is to protect the legal rights of absent class members. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir.1987). Courts interpreting the first prerequisite of 23(a)(4) have held that "the primary criterion is the forthrightness and the vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Schatzman v. Talley*, 91 F.R.D. 270, 273 (N.D.Ga.1981). In addition, the representative must not have interests which are antagonistic to those of the planned class. *Gonzales v. Cassidy*, 474 F.2d 67, 73 n. 10 (5th Cir.1973). With respect to the second requirement of Rule 23(a)(4), it must be shown that the plaintiffs' attorney is "qualified, experienced and generally able to conduct the proposed litigation...." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985).

Defendants do not raise significant arguments under this criteria or challenge the competency of the named plaintiffs' attorneys. Indeed, counsel have demonstrated an understanding of the issues as well as the competence and ability to conduct this litigation. The Court finds that this requirement is met.

### B. RULE 23(b) INQUIRY.

Even if the Court determines that the action satisfies all the requirements of Rule 23(a), the action must fall within one of the three categories of class suits described in Rule 23(b). In this case, plaintiffs argue that this case is appropriate for certification under Rule 23(b)(2) and 23(b)(3).

#### 1. Subdivision (b)(2).

■ Rule 23(b)(2) class certification is warranted when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Plaintiffs contend that Allianz Insurance has adopted a standardized business practice under which it refuses to acknowledge responsibility to make payments under the Med Pay provisions of the Allianz policy. "Generally applicable," as used in Rule 23(b)(2) has been interpreted to mean that the party opposing the class "has acted in a consistent manner towards members of the class so that his actions may be viewed as part of a pattern of activity, or to establish a regulatory scheme, to all members." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *supra*, section 1775 at 449. In this case the complaint alleges that the defendants have consistently refused to pay claims brought by persons who were injured as occupants of MBCC leased vehicles. Plaintiffs contend that the Allianz policies clearly cover claims brought by persons injured while occupants of MBCC leased vehicles and that defendants' wrongful refusal to pay these claims is a policy or practice that affects all or nearly all of the members of plaintiffs' proposed class. Plaintiffs further allege that the defendants have refused to pay the claims on grounds generally applicable to all members of the class. In sum, plaintiffs conclude that the defendants' consistent refusal to pay these claims constitutes the type of pattern of practice envisioned by Rule 23(b)(2). The Court agrees that plaintiffs' challenge of defendants' conduct with regard to paying claims under the Allianz–MCBB policies is the type of situation maintainable under subsection (b)(2). The insurers' conduct has been directed to all claimants who have been injured as occupants of MBCC vehicles and therefore defendants' practice affects persons

similarly situated. Plaintiffs therefore have met the first requirement to bringing an action under Rule 23(b)(2).

■ The second prerequisite to relief under Rule 23(b)(2) is that the plaintiffs must be seeking final injunctive or declaratory relief against the party opposing the class. A class seeking solely declaratory relief may be certified under subdivision (b)(2). *Bower v. The Bunker Hill Co.*, 114 F.R.D. 587 (D.C.Wash.1986); 7A Wright & Miller, *supra*, section 1775 at 462. Here the plaintiffs are primarily seeking a declaration of their rights to coverage under the Allianz policies. As incidental relief, Count I also seeks damages in the form of unreimbursed funeral or medical expenses. It is settled law that an action may be maintained under subdivision (b)(2) even though the plaintiffs are seeking monetary damages so long as the primary relief sought is declaratory or injunctive. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1554 (11th Cir.1986); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 (11th Cir.1982); *Parker v. Local Union No. 1466*, 642 F.2d 104, 107 (5th Cir.1981). Here the damage issue in Count I is ancillary to the claims for declaratory relief and thus appropriate for the Court to consider in awarding class relief under Rule 23(b)(2). The determination of who is entitled to recover damages and in what amount will be considered separately by the Court. See *Ligon v. Frito–Lay, Inc.*, 82 F.R.D. 42, 49 (N.D.Tex.1979) (ancillary relief of damages in Title VII class action determined separately from request for injunctive relief). Subdivision (c)(4)(A) permits an action to be brought under Rule 23 "with respect to particular issues" and to restrict the class action aspects of the case to those issues dealing with injunctive or declaratory relief while allowing damage issues to be tried separately. Wright & Miller, *supra*, section 1775 at 470. Thus the action may proceed under subdivision (b)(2) even though plaintiffs are also seeking monetary relief in Count I.

### 2. Subdivision (b)(3).

An action appropriate under subdivision (b)(2) also may qualify under subdivision (b)(3). *Mungin v. Florida E. Coast Ry.*, 318 F.Supp. 720 (D.C.Fla.1970). Rule 23(b)(3) sets forth two prerequisites that must be satisfied in order to maintain a class action under this subdivision. These are: (1) the questions of law or fact common to the members of the class must predominate over any questions affecting only individual members; and (2) the class action must be superior to other available methods for the fair and efficient adjudication of the controversy.

### a. Predominance

In opposing the Plaintiffs' Motion for Class Certification, the defendants argue that the Rule 23(b)(3) requirements are not met because individual issues will predominate over issues common to the class. Specifically, defendants argue that there are unique factual circumstances surrounding each individual plaintiff's accident, status, individual insurance coverage, settlements, and medical outcomes that predominate, if not outright control, the outcome of plaintiffs' claims. Plaintiffs reply that in determining whether to certify a class, a district court cannot examine the underlying merits of the claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. at 177–78, 94 S.Ct. at 2152–53. According to plaintiffs argument, the only matters pertinent to a district court's determination of a motion for class certification pursuant to Rule 23 are the requirements of the Rule itself, and the factual allegations of the complaint, which must be accepted as true. See *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975).

Defendants do not raise the issue, but the Court notes, that the Eleventh Circuit has limited the *Eisen* doctrine. The Eleventh Circuit has indicated that "[w]hile it is true that a trial court may not properly reach the merits of a claim when determining whether class certification is warranted," the principles of *Eisen* should not be, "talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements." *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir.1984); see also *Nelson v. United States Steel Corp.*, 709 F.2d 675, 679–80 (11th Cir. 1983). Even in *Kirkpatrick*, the Eleventh

Circuit recognized that courts "may look beyond the allegations of the complaint in determining whether a motion for class certification should be granted." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d at 722.

In view of the evolving nature of the *Eisen* doctrine in this Circuit, the Court cannot simply just look to the allegations in the Complaint as plaintiffs suggest. Thus the Court, in a limited manner, must look beyond the Complaint in order to determine whether individual issues will predominate in this action over questions common to the class. In doing so the Court does not "delve" into the merits of plaintiffs' proof. Specifically, the Court does not assess the plaintiffs' likelihood of success on the claims, as the district court improperly did in *Kirkpatrick*. See *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d at 722–23 (finding that the trial court's rejection of the fraud-on-the-market theory and subsequent denial of class certification was improperly based on nothing other than the court's assessment of the plaintiffs' likelihood of success on the claims). The Court is not determining that plaintiffs' claims lack evidentiary support, or that they are likely to be unsuccessful. Such an assessment of the validity of plaintiffs' proof would be a clear violation of the *Eisen* doctrine. Instead, the Court looks beyond the allegations in the complaint, at some of arguments raised in Defendants' Memorandum of Law in Opposition to Class Certification to determine whether individual questions will predominate in this action over issues of law or fact common to the class. When common questions represent a significant aspect of the case and can be resolved for all class members in a single adjudication, there is clear justification for treating the case as class rather than on an individual basis. The need for calculations of the individual benefits due to individual claimants is no reason to bar class relief with respect to common legal issues. *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683 (D.C.Ga.1983). The test is whether there is an essential common factual link between all class members and the defendant for which the law provides a remedy. *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331 (D.C.Ill.1974). The Court finds that at this stage of the litigation,

the test has been met. The common factual link that binds all plaintiffs is that they were injured in accidents in which they were occupants of MBCC leased vehicles. A legal determination as to whether the policy in question covers claimants in this factual situation is the predominant question of interest among the class members. Although questions unique to each individual member may remain after the predominant common question has been resolved, the case may be maintained as a class. See *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 229 (7th Cir.1983) (class manageable even though damages would be calculated separately for each member); *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628 (D.S.C. 1992) (certification of limited number of issues rendered class action maintainable despite presence of numerous individual issues).

### b. Superiority.

The Court concludes that the second requirement of Rule 23(b)(3), which mandates that the class action be superior to other methods of litigation, has also been met. Superiority is determined by comparing the efficiency and fairness of all available methods of adjudicating the matter. *Coleman v. Cannon Oil Co.*, 141 F.R.D. 516, 529 (M.D.Ala.). One factor courts look at in making this determination is the size of the proposed class. An action involving a large class is likely to take the place of multiple separate lawsuits. See *In re Amerifirst Secs. Litig.*, 139 F.R.D. 423 (S.D.Fla.1991). In this case, the Court finds that a class action would provide these plaintiffs their "day in court" without further overburdening the crowded docket of the Southern District of Florida with a multiplicity of lawsuits. In *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980), the Supreme Court made the following comments regarding the efficiency of class action suits, which this Court finds particularly relevant to the insurance claims:

The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government. Where it is not economi-

cally feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.

445 U.S. at 339, 100 S.Ct. at 1174. A second factor courts often consider in determining superiority, is the anticipated recovery for each individual plaintiff. Class actions are particularly appropriate, where, as here, multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs. See Advisory Committee Note to 1996 Amendment to Rule 23.

In determining whether a class action is a superior method of adjudication, the Court must weigh the benefits of a class determination against the individual member's interest in separate adjudications. *Nichols v. Mobile Board of Realtors, Inc.*, 675 F.2d 671 (5th Cir.1982). As discussed previously, questions common to the class must predominate over questions affecting only individual members. Issues that are subject to generalized proof, and therefore applicable to the class as a whole, must predominate over those issues that are subject to only individualized proof. *Nichols*, 675 F.2d at 676. In light of these considerations, the Court finds that at this time, a class action appears to be the superior method for litigating this case.

## V. CONCLUSION.

The plaintiffs have shown that they meet the requirements of Rule 23(a) and come within one of the provisions of 23(b). The chief allegation of the Complaint is that the defendants have been systematically denying all claims made by persons injured in accidents while they were occupants of MBCC leased vehicles. The named plaintiffs seek to represent other persons who were injured while occupants of MBCC leased vehicles who have claims similar to the named plaintiffs. Primarily, plaintiffs seek a declaration of their rights under the Allianz policies, although Count I alleges an incidental claim for monetary damages. The Court finds that the named plaintiffs have interests coextensive with those of the class. That the defendants may raise individual defenses

to individual plaintiff's claims for monetary damages does not negate the common question of coverage. Defendants' arguments to the contrary have been carefully considered. If the Court finds that in determining the coverage issue, individualized facts and legal issues assume predominance, it will at that time consider decertifying the class. Wherefore it is ordered that, for the foregoing reasons, Plaintiffs' Motion for Class Certification is **GRANTED**. Furthermore, for the reasons stated, the Defendants' Motion to Dismiss Counts I and III is **DENIED**.