**WESTWAYS WORLD TRAVEL, INC., and Sundance Travel Service, an Arizona Partnership, individually and on behalf of others similarly situated, Plaintiffs,**

v.

**AMR CORPORATION, et al., Defendants.**

No. ED CV 99–386 RT.

United States District Court, C.D. California.

July 9, 2003.

---

Linda S. Platisha, Linda S. Platisha Law Offices, Yorba Linda, CA, Dean Browning Webb, Dean Browning Webb Law Offices, Vancouver, WA, Gretchen M. Nelson, Kreindler & Kreindler LLP, Los Angeles, CA, for plaintiff.

Robert E. Cooper, William A. Wargo, Robert P. Berry, Gibson Dunn & Crutcher, Chad S. Hummel, Manatt Phelps & Phillips, Jeffrey A. LeVee, Amy A. Stathos, Jones Day, Los Angeles, CA, Joshua S. Goodman, Farley J. Neuman, Jenkins Goodman & Neuman, San Francisco, CA, Kevin D. Mc-

Donald, Sarah Mackey Mathias, Anthony P. Lalla, Edwin L. Fountain, Jones Day, Washington, DC, for defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

TIMLIN, District Judge.

The Court, the Honorable Robert J. Timlin, has read and considered Plaintiffs Westways World Travel, Inc. and Sundance Travel Service ("Plaintiffs")'s motion for class certification, the opposition filed by Defendants AMR Corporation ("AMR"), American Airlines, Inc. ("American"), American Eagle Holding Corporation ("American Eagle"), and Sabre Inc. ("Sabre") (collectively, the "American Defendants") and the opposition filed by Defendant Airlines Reporting Corporation ("ARC"). The Court has also read and considered Plaintiffs' replies to both oppositions.[1] Based on such consideration, the Court concludes as follows:

### I.

### BACKGROUND

On November 12, 1999, Plaintiffs filed a class action FAC against the American Defendants and ARC alleging that they violated the Racketeering Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO") and that American, American Eagle, and ARC breached a contract with Plaintiffs. Plaintiffs are travel agencies, and allege that the American Defendants and ARC have engaged in a scheme to collect money from Plaintiffs by forcing them to pay large penalties for purported "tariff" violations by passengers who purchased airline tickets from Plaintiffs. The purported tariff violations stem from the passengers' use of "back to back supersaver tickets," "hidden city tickets" and round trip tickets used for one-way travel. These types of tickets purchased and used by passengers on American and American Eagle to save money on airline tickets were sold by Plaintiffs to those passengers. Allegedly, American, with the assistance of the other defendants, collected or attempted to collect these passenger savings from Plaintiffs through the issuance of "Debit Memos" (demands for money) by threatening to terminate the contractual right of Plaintiffs to issue airline tickets on American and American Eagle if Plaintiffs did not pay the Debit Memos.

Plaintiffs stated the following claims in their First Amended Complaint ("FAC"): 1) against American for violation of 18 U.S.C. § 1962(a) ("Section 1962(a)") ("first claim"), 2) against American for violation of 18 U.S.C. § 1962(c) ("Section 1962(c)") ("second claim"), 3) against all defendants for violation of 18 U.S.C. §§ 2 and Sections 1962(a) and (c) under aiding and abetting liability ("third claim"), 4) against all defendants for violation of Sections 1962(a) and (c) under respondeat superior liability ("fourth claim"), 5) against all defendants for violation of 18 U.S.C. § 1962(d)("Section 1962(d)") for conspiracy to violate Sections 1962(a) and (c) ("fifth claim"), 6) against American, American Eagle, and ARC for breach of contract, 7) against all defendants for unjust enrichment, and 8) against all defendants for declaratory and injunctive relief.

The Court granted the American Defendants' motion to dismiss the FAC as to Plaintiffs' first claim against American for violation of Section 1962(a) and Plaintiffs' third, fourth and fifth claims against the American Defendants regarding the alleged violation of Section 1962(a). The Court denied the remainder of the American Defendants' motion to dismiss under Rule 12(b)(6). The Court also granted ARC's motion to dismiss the FAC as to Plaintiffs' third and fifth claims against it, and denied the remainder of ARC's motion to dismiss under Rule 12(b)(6). *Westways World Travel, Inc. v. AMR Corp.,* 182 F.Supp.2d 952, 964 (C.D.Cal.2001).

Plaintiffs subsequently filed a Second Amended Complaint ("SAC"), stating the following claims: 1) against American for violation of Section 1962(c), 2) against AMR, American, American Eagle, and Sabre for

---

1. The Court further read and considered the American Defendants' Notice of Decision and

attached Exhibits, filed on July 8, 2003.

violation of 18 U.S.C. §§ 2 and 1962(c) under aiding and abetting liability, 3) against American for violation of Section 1962(c) under respondeat superior liability, 4) against American, AMR, American Eagle, and Sabre for violation of 18 U.S.C. § 1962(d) for conspiracy to violate Section 1962(c), 5) against American, American Eagle, and ARC for breach of contract, 6) against all defendants for unjust enrichment, and 7) against all defendants for declaratory and injunctive relief.

Plaintiffs now bring this motion for class certification for each of their claims.

## II.

### ANALYSIS

Fed.R.Civ.P. 23 ("Rule 23") defines the requirements for a class action Rule 23(a) lists four prerequisites to a class action: 1) the class must be so numerous that joinder is impracticable, 2) there are common questions of law or fact, 3) the claims and defenses of the class representative are typical of those of the class, and 4) the class representative will fairly and adequately represent the interests of the class.

In addition to meeting the requirements of Rule 23(a), the potential class representative must also show that the action is of one of the types of actions listed in Rule 23(b) that is maintainable as a class action. In this case, Plaintiffs contend that the action qualifies under both Rule 23(b)(2) and Rule 23(b)(3).

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class," thereby making broad injunctive and/or declaratory relief appropriate to the class as a whole. Rule 23(b)(2).

Rule 23(b)(3) requires that the common questions of law or fact predominate over questions affecting the class members individually and that a class action is the superior method for litigating the class claims.

▇▇▇ Although the Supreme Court once stated that courts have no authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974), later cases make clear that a preliminary inquiry into the merits is sometimes necessary to make a meaningful determination of class certification issues. *See, e.g., Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). At the same time, the court is required to take the allegations of the plaintiff's complaint as true. *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975). Plaintiff bears the burden of showing that the elements of Rule 23 are met. *Doninger*, 564 F.2d at 1308.

### A. A Class Exists

▇▇▇ Implicit in Rule 23 is the requirement that a class exist and that the putative class representative be a member of the class. *Equal Employment Opportunity Comm'n v. General Telephone Co.*, 599 F.2d 322, 327 (9th Cir.1979). The fact that the class includes future members does not render the class definition so vague as to preclude certification. *Probe v. State Teachers' Retirement System*, 780 F.2d 776, 780 (9th Cir.1986) (citing 7A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 1760, at 580–81 (1972).

▇▇▇ Plaintiffs define the class in their SAC as themselves and all other travel agencies who have or will be required to pay monies to American and American Eagle for Debit Memos relating to alleged tariff violations by passengers involving hidden city tickets, back-to-back supersaver tickets, and round trip tickets used for one way travel during the period commencing July 26, 1995 to the present.

Neither the American Defendants nor ARC contests the definition of the class.

For the above reasons, the court finds the class is sufficiently defined and that Plaintiffs are Class members.

### B. Standing

▇▇▇ Standing "is a jurisdictional element that must be satisfied prior to class certification." *Nelsen v. King County*, 895 F.2d

1248, 1249–50 (9th Cir.1990)(citing *La Duke v. Nelson,* 762 F.2d 1318, 1325 (9th Cir. 1985)).

ARC opposes class certification of Plaintiffs' claims against ARC on grounds that because Plaintiffs cannot show that they have suffered any wrong at the hands of ARC, Plaintiffs lack Article III standing. The American Defendants do not challenge that Plaintiffs have standing to bring the claims against them.

■ There are three requirements for Article III standing: "(1) injury in fact, which means an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical, (2) a causal relationship between the injury and the challenged conduct, which means that the injury fairly can be traced to the challenged action of the defendant, and has not resulted from the independent action of some third party not before the court, and (3) a likelihood that the injury will be redressed by a favorable decision, which means that the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative." *Bras v. California Public Utilities Commission,* 59 F.3d 869, 872 (9th Cir.1995)(citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136 119 L.Ed.2d 351 (1992)).

■ The degree of proof necessary to establish standing differs at various stages of the proceedings. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351(1992)("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," but "[i]n response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true.") (citations omitted).

■ At the class certification stage, Plaintiffs' allegations are to be accepted as true and the merits of Plaintiffs' claims are not at issue. *Blackie, supra,* 524 F.2d at 901 n. 17 (9th Cir.1975)("The court is bound to take the substantive allegations of the complaint

as true, thus necessarily making the class order speculative in the sense that the plaintiff may be altogether unable to prove his allegations.")

■ Where a defendant objects on the basis of standing, class certification must be considered on a claim by claim basis. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.,* 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), *James v. City of Dallas,* 254 F.3d 551, 563 (5th Cir. 2001), *Bolin v. Sears, Roebuck & Co.,* 231 F.3d 970, 976 (5th Cir.2000), *Rosen v. Tennessee Comm'r of Fin. & Admin.,* 288 F.3d 918, 928 (6th Cir.2002), *Prado–Steiman v. Bush,* 221 F.3d 1266, 1279–80 (11th Cir.2000).

ARC is a central clearinghouse between airlines and travel agents. Pursuant to an agreement executed with each accredited agent (the "ARC Agreement"), ARC is authorized, among other things, to remove a travel agency's identification plates and travel documents if the agency is deemed to have breached the ARC Agreement, and also may draw upon the agency's bond or letter of credit which the agency is required to maintain.

■ Plaintiffs bring three claims against ARC. Plaintiffs' first claim is that ARC breached the ARC Agreement by issuing and/or enforcing the payment of Debit Memos Plaintiffs support this claim by alleging that 1) ARC helps American enforce its Debit Memos by removing or threatening to remove a travel agent's ARC accreditation if it fails to pay American's Debit Memos, 2) ARC draws on an agency's bond or letter or credit for payment of American's Debit Memos, and 3) ARC notifies its other participating carriers that American has revoked an agent's appointment to write tickets for travel on American. Plaintiffs' second claim against ARC is that ARC has been unjustly enriched by participating with the American Defendants in the uniform and common scheme to collect alleged "damages" from Plaintiffs.

Plaintiffs' final claim against ARC is for declaratory and injunctive relief alleging that it and the other Defendants have impeded Plaintiffs' ability to conduct their lawful busi-

ness and enhanced Defendants' superior and equitable bargaining power over Plaintiffs. Plaintiffs in this claim seek ". . . . a judgment against defendants: (i) declaring that it is unlawful for defendants to hold a travel agency responsible and liable for the acts of a third party, the passenger, and that it is unlawful to extort money through the Debit Memos for alleged tariff violations in amounts unrelated to actual damages incurred, (ii) enjoining defendants from engaging in these activities and actions in the future, and (iii) awarding attorneys' fees and costs incurred in connection with this litigation . . . ."

As to the first claim, ARC offers deposition testimony to prove that it has never terminated nor threatened to terminate the ARC accreditation of either of the named Plaintiffs. Nor has it, ARC asserts, threatened to take any other action against the named Plaintiffs if they failed to pay American's Debit Memos. ARC also refers to deposition testimony to support its assertion that it has never drawn or threatened to draw on either Plaintiff's letter of credit or bond for payment of an American Debit Memo. In addition, ARC argues that even if ARC notified other participating carriers when American terminated Sundance's appointment to sell tickets for American, that notification would not have breached ARC's contract because the contract expressly provides that ARC would do so. Finally, ARC argues that ARC has never taken any action against the named Plaintiffs relating to the Debit Memos they received for the three types of tickets involved. For all these reasons, Defendants argue that Plaintiffs have not proven any injury, and thus Plaintiffs do not have Article III standing as to the breach of contract claim.

In terms of the second claim, ARC offers deposition testimony to show that Plaintiffs remitted checks directly to American, not to ARC. ARC asserts that an action for unjust enrichment presupposes the receipt of a benefit by the Defendant, and that no such benefit was obtained by ARC here. Thus, ARC argues, Plaintiffs lack standing to bring the unjust enrichment claim.

Regarding Plaintiffs' claim for declaratory and injunctive relief ARC does not argue that Plaintiffs have no standing regarding this claim.

ARC's challenges to Plaintiffs' standing must fail for two reasons.

█ First, ARC's arguments notwithstanding, Plaintiffs have satisfied all of Article III's standing requirements. In terms of the first requirement of injury, pecuniary injury may constitute an injury in fact. *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 506 (9th Cir.1988)(citing *Data Processing v. Camp*, 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970)). Threat of collection based on unpaid debt has been held sufficient to satisfy the injury-in-fact requirement. *James v. City of Dallas, Texas*, 254 F.3d 551, 564 (5th Cir.2001), *cert. denied*, 534 U.S. 1113, 122 S.Ct. 919, 151 L.Ed.2d 884 (2002), *Tidwell v. Schweiker*, 677 F.2d 560, 565 (7th Cir.1982). Plaintiffs have shown pecuniary injury in that they have paid thousands of dollars as a result of the issuance and collection of the Debit Memos. Moreover, Plaintiffs have alleged that their payment of the Debit Memos was, in part, attributable to a common scheme and concerted action by all of the Defendants, including ARC to force Plaintiffs to pay the Debit Memos.

Plaintiffs have also proven the second element required for standing, "causal connection." Plaintiffs have alleged and have testified in depositions that their payment of the Debit Memos was prompted, in part, by the threat of termination of their right to issue tickets on American coupled with the threat of termination of their ARC accreditation or collection by ARC from Plaintiffs' bond or letter of credit. There are no attenuated links in causation that would bar Plaintiffs from pursuing their claims against ARC.

In terms of the third requirement, redressability, ARC does not contest that a favorable judgment will redress the injuries that Plaintiffs and the members of the class have sustained. Thus, Plaintiffs have alleged facts to satisfy Article III's standing requirements as to the claim for breach of contract.

The second reason that ARC's challenge must fail is that ARC's arguments constitute

an improper attempt to litigate the merits of the case. *Blackie, supra,* 524 F.2d at 901 ("[N]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong is a basis for declining to certify a class").

Plaintiffs dispute nearly all the factual assertions ARC makes to support its position that Plaintiffs do not have standing to bring suit on the breach of contract claim. For example, Plaintiffs dispute ARC's contention that ARC has not drawn or threatened to draw on Plaintiffs' bond or letter of credit. Plaintiffs offer deposition testimony showing that Plaintiffs understood that their bond was at risk if they did not pay the Debit Memos. Plaintiffs urge that ARC's efforts to collect on the subject Debit Memos were beyond the scope of ARC's contract and constitute a breach by ARC of the ARC Agreement. Plaintiffs also dispute ARC's claim that the named Plaintiffs have offered no evidence that they have suffered at the hands of ARC. In addition, Plaintiffs provide evidence confirming that American's appointment of one of the named Plaintiffs, Sundance, was terminated and that ARC was involved in notifying other ARC member carriers of the termination.

In terms of the unjust enrichment claim, Plaintiffs cite to deposition testimony that ARC collects fees from travel agents including Plaintiffs based on an annual fixed amount and a transaction fee. Thus, ARC charges a fee for every transaction, including those transactions where a travel agent pays a Debit Memo through the weekly sales report. ARC is therefore, alleged to be within the scope of the alleged unjust enrichment claim and Plaintiffs meet the three requirements for Article III standing regarding that claim.

As noted above, ARC does not contest Plaintiffs having Article III standing regarding the claim for declaratory/injunctive relief. ▮ To summarize, ARC's involvement in the collection of the Debit Memos is a core issue in Plaintiffs' SAC and is not susceptible to determination solely by ARC's denial of involvement. In addition, there may be a triable issue of fact as to whether the ARC Agreement permitted a carrier to unilaterally issue an Addendum thereto binding the travel agents, including Plaintiffs, who were parties to the agreement. The interpretation of the ARC Agreement and the obligations that devolve therefrom may involve factual issues that are not appropriate for determination on a motion for class certification. *Pederson v. Louisiana State University,* 213 F.3d 858, 870 (5th Cir.2000) ("Standing requires alleged misconduct, not proven misconduct" and "To the extent that the district court reached the merits of the [plaintiffs'] claims in its opinion, we remark only that 'It is inappropriate for the court to focus on the merits of the case when considering the issue of standing' ") (citation omitted).

The Court concludes that the Plaintiffs have Article III standing as to all their claims against ARC.

### C. Numerosity and Impracticability of Joinder

▮ While the American Defendants do not challenge Plaintiffs' satisfaction of the numerosity requirement, ARC challenges this requirement on several grounds. First, ARC contends that Plaintiffs have offered a large number of potential class members without offering evidentiary support for their estimation. ARC cites a district court case from Florida for the proposition that speculation regarding the size of a class is not sufficient to satisfy the numerosity requirement. *Leszczynski v. Allianz Ins.,* 176 F.R.D. 659, 669 (S.D.Fla.1997) (citing *Makuc v. Am. Honda Motor Co.,* 835 F.2d 389, 394 (1st Cir.1987)).

Second, ARC argues that Plaintiffs have not satisfied the numerosity requirement because they have provided no reasonable estimate of the number of travel agents who either suffered specifically from any breach of contract by ARC or at whose expense ARC was unjustly enriched.

ARC's arguments here are not persuasive.

First, the very case that ARC cites supports the proposition that Plaintiffs are not required to quantify with precision the num-

ber of class members, but that Plaintiffs may rely on reasonable inferences drawn from the available facts in estimating the size of the class. *Leszczynski, supra,* 176 F.R.D. at 669 ("To satisfy numerosity, plaintiffs must proffer some evidence of the number of members in the purported class, or at least a reasonable estimate of that number ... It is not necessary that the precise number of class members be known.") (citations omitted). This is particularly true where the information regarding the number of individuals affected by Defendants' wrongful conduct is inherently within Defendants' control. *In re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 509 (S.D.N.Y.1996). In this case, Plaintiffs claim that the names and addresses of all Class members can be readily identified in business records maintained by Defendants.

Second, where Plaintiffs have alleged one common scheme whereby all defendants have acted jointly, there is no requirement that numerosity must be tested as to each defendant. *Siddiqi v. Regents of the University of California,* 2000 WL 33190435, *5 (N.D.Cal. 2000) (certifying a class of deaf and hard of hearing students at two universities alleging violations of the Americans with Disabilities Act and rejecting defendants' numerosity contention that students should not be aggregated for numerosity purposes because only a sub-set of the proposed class was affected by certain policies).

Here, Plaintiffs have alleged a common scheme in which American, American Eagle, and ARC have breached and continue to breach the ARC Agreement by issuing and/or enforcing the payment of Debit Memos, thereby forcing Plaintiffs and Class members (consisting of about 10,000 travel agents, i.e., one third of the 30,000 ARC-approved travel agents or agencies located in the United States) to pay monies for alleged tariff violations committed by passengers of American and American Eagle Plaintiffs' allegation of a common scheme satisfies the numerosity requirement as to all defendants, including ARC.

Moreover, the American Defendants do not contest Plaintiffs' satisfaction of the numerosity requirement. Instead, the Ameri-

can Defendants concede that the class is sufficiently numerous and has presented evidence that more than 1,400 Debit Memos were issued to various travel agents during the class period for the three types of tickets at issue in this suit. Whether there are 1,400 or 10,000 class members is inconsequential because either number clearly meets the threshold of joinder impracticability. *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–14 (9th Cir.1964)("The classes involved are self-evidently large. It seems unlikely that defendants can successfully controvert plaintiffs' allegation that the expense and burden, to the parties and the court, of litigating each claim separately renders that course impractical, especially since 'impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class.' ") (citing *Advertising Specialty Nat. Ass'n v. FTC,* 238 F.2d 108, 119 (1st Cir.1956)).

The Court concludes Plaintiffs have met the numerosity and joinder impracticability criteria for class certification.

### D. Common Questions of Law and Fact

■ Rule 23(a)(2) requires the existence of common questions of law or fact. "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998).

■ Plaintiffs satisfy the commonality requirement. Plaintiffs allege that the injuries of the Class members resulted from a "continuing course of conduct" as evidenced by an ongoing scheme to collect penalties for alleged tariff violations from travel agents as well as through the issuance of a series of omissions and misrepresentations as to the true nature of the Debit Memos and defendants' "tariffs."

Neither the American Defendants nor ARC challenge Plaintiffs' satisfaction of the commonality requirement.

For the above reasons, the court finds that the commonality requirement for class certification is met.

## E. Typicality

 "Under Rule 23's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members, they need not be substantially identical." *Hanlon, supra,* 150 F.3d at 1020. "[T]he named plaintiff need not have suffered an identical wrong. It is sufficient if his allegations are derived from the same remedial and legal theories." *Murray v. Local 2620, District Council 57, American Federation of State, County and Municipal Employees, AFL–CIO,* 192 F.R.D. 629, 635 (N.D.Cal.2000). On the other hand, class certification is inappropriate when the potential class representative is " 'subject to unique defenses which threaten to become the focus of the litigation.' " *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992)(citing *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990), cert. denied, 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991)).

While the American Defendants do not challenge Plaintiffs' satisfaction of the typicality requirement, ARC argues that because the named Plaintiffs do not have standing and thus have not suffered the same injury as the members of the purported class, the named Plaintiffs are not typical.

 ARC is correct in that typicality may not be established unless the named representative has individual standing to raise the legal claims of the class. *Prado–Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir.2000). However, as discussed above, Plaintiffs have shown that they salsify the Article III standing requirements. Thus, ARC's challenges to the typicality of named Plaintiffs on standing grounds lack merit.

 Separate from standing considerations, Plaintiffs satisfy the typicality requirement. Plaintiffs have set forth detailed allegations as to Defendants' and ARC's participation in the alleged scheme to enforce and compel the payment of the Debit Memos. The claims are the same for each Class member, and are based on the same legal theories. A plaintiff who has been adversely impacted by the same wrongful course of conduct can represent a class of others who were similarly impacted *Schneider v. Traweek,* 1990 WL 132716, *7–9 (1990), *Shields v. Smith,* [1992 Transfer Binder] Fed.Sec. L.Rep. ¶ 97,00, *4–5, 1992 WL 295179 (N.D.Cal.1992), *Alaniz v. California Processors, Inc.,* 73 F.R.D. 269, 276 (N.D.Cal. 1976).

## F. Adequacy of Representation

 The adequacy of representation requirement arises out of due process concerns for providing absent plaintiffs with adequate representation before binding them by a judgment. *See Hanlon, supra,* 150 F.3d at 1020. A class representative must be able "fairly and adequately to protect the interests" of all the class members. Rule 23(a)(4). Representation is adequate if (1) the class representatives are not disqualified by interests antagonistic to the remainder of the class, and (2) the attorney representing the class is qualified and competent. *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978).

### 1. Adequacy of Named Plaintiffs as Class Representatives

 The inquiry whether the class representative will adequately represent the class focuses on two questions: 1) whether the class representative and its counsel have any conflicts of interest with the class members, and 2) whether the class representative and its counsel will vigorously prosecute the action on behalf of the class. *Hanlon, supra,* 150 F.3d at 1020, citing *Lerwill, supra,* 582 F.2d at 512.

The American Defendants do not contest Plaintiffs' satisfaction of this requirement, but ARC challenges Plaintiffs' adequacy on two grounds. First, ARC argues that because the named Plaintiffs do not have standing to bring either a breach of contract or unjust enrichment claim against ARC, Plaintiffs do not have the same claims as the purported class members, and thus they face

defenses unique to them and are not adequate class representatives. Second, ARC offers deposition testimony to show that neither of the named Plaintiffs have reason to fully prosecute the case against ARC. ARC argues that the named Plaintiffs are really interested in prosecuting American and are ambivalent with regard to ARC.

■ With regard to ARC's first argument, as stated above, Plaintiffs have shown that they satisfy the Article III standing requirements. Thus, ARC's first challenge to the adequacy of the named Plaintiffs fails.

In terms of ARC's second challenge, Plaintiffs provide convincing evidence that they have compelling reasons to fully prosecute the case against ARC. Plaintiffs, citing deposition testimony, argue that they have amply demonstrated that they have an interest in vigorously pursuing their claims against ARC. Plaintiffs also claim that they have long-standing contracts with ARC and that both have a significant financial stake in the litigation. Furthermore, Plaintiffs argue that by presenting their representatives for depositions and actively participating in discovery throughout the case, Plaintiffs have demonstrated their interest in vigorously pursuing the claims against ARC. *See Sandwich Chef of Texas v. Reliance National Indemnity Insurance Co.*, 202 F.R.D. 484, 493–94 (S.D.Tex.2001)(finding that plaintiff who actively participated in discovery and who had a substantial financial stake in the litigation was an adequate class representative). ARC's second challenge to the adequacy of the named Plaintiffs lack merit.

### 2. *Adequacy of Counsel*

■ In evaluating the adequacy of attorneys representing the class, a court may examine the attorneys' professional qualifications, skill, experience, and resources. *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 801 (3rd Cir.1995). The court may also look at the attorneys' demonstrated performance in the action itself. *Sullivan v. Chase Inv.*, 79 F.R.D. 246, 258 (N.D.Cal.1978). Plaintiffs have demonstrated Plaintiffs' counsel are qualified and competent to represent the class in both respects.

■ Plaintiffs have submitted the professional résumés of the attorneys who represent Plaintiffs. The résumés confirm that counsel are qualified to handle the litigation. They are experienced in and have successfully prosecuted numerous class action cases throughout the United States and in this district.

Neither the American Defendants nor ARC challenge Plaintiffs' satisfaction of this requirement. Thus, adequacy of counsel is satisfied.

Given the foregoing, the Court determines that Plaintiffs have met their initial burden of establishing the Rule 23(a) requirements for class certification. The Court thus turns to the question whether the class is maintainable pursuant to Rule 23(b).

### G. Predominance of Common Questions of Law and Fact

Rule 23(b)(3) requires that questions of law or fact common to the class predominate over questions affecting the individual members and that, on balance, a class action is superior to other methods available for adjudicating the controversy Rule 23(b)(3).

### 1. *Predominance*

■ Rule 23(b)(3)'s requirement that common issues of law or fact predominate over individual issues is more stringent than Rule 23(a)'s commonality requirement. While 23(a)(2) requires *some* common questions of law or fact, Rule 23(b)(3) requires that the common questions predominate: "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997).

The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually,

and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed.R.Civ.P. 23(b)(3) advisory committee's note (1966).

### a. *Common Questions of Law and Fact Predominate In Plaintiffs' Claims Involving American Defendants*

The American Defendants maintain that class certification is not appropriate because individual issues, rather than common issues of law or fact, predominate Plaintiffs' RICO and breach of contract claims.

With regard to Plaintiffs' RICO claims, the American Defendants argue that individual issues predominate for five reasons. First, the American Defendants argue that each Debit Memo constitutes an individualized statement that a particular travel agent violated American's rules in a specified fashion on specific occasion and that these statements are not uniform but vary from Debit Memo to Debit Memo. The American Defendants thus argue that Plaintiffs' argument that American made "uniform misrepresentations" to the class is inaccurate. Second, the American Defendants contend that a mini-trial will be required to determine whether each Debit Memo was legitimate, fraudulent, or extortionate. Third, the American Defendants argue that specific intent is an element of both wire fraud and extortion and that particular facts and circumstances of each individual Debit Memo must therefore be examined to determine whether American possessed the requisite intent in each case. Fourth, the American Defendants argue that civil plaintiffs who allege a RICO claim based on mail or wire fraud must establish that they relied to their detriment on misrepresentations made in furtherance of the alleged scheme to defraud. The American Defendants therefore claim that reliance will be an individualized issue for each Class member. Finally, the American Defendants maintain that Sabre's role in the alleged scheme is also an issue deserving of individualized inquiry. Defendants contend that Sabre did not provide reservation services to all travel agents at all times during the class period (July 26, 1995 to the present) and that the question whether each travel agent used Sabre at the

time it received the Debit Memo needs to be individually determined for each of the Debit Memos at issue.

The American Defendants also argue that individual questions also dominate Plaintiffs' breach of contract claim. The American Defendants assert that to prevail on a claim for breach of contract, one of the elements Plaintiffs must establish is Plaintiffs' performance or excuse for nonperformance. Thus, the American Defendants argue, the question whether Plaintiffs and members of the Class performed the ARC Agreement, or whether, instead, they engaged in fraudulent acts or breach of contract, presents an individual issue.

The arguments of the American Defendants regarding the RICO claims are not persuasive.

The American Defendants' first argument, that American has not made uniform statements to Class members in the Debit Memos contradicts allegations made in Plaintiffs' SAC. There, Plaintiffs have alleged that defendants made uniform misrepresentations, not as to the individual conduct of Plaintiffs and other Class members, but as to defendants' right to recover monies from them. These misrepresentations are alleged to amount to threats of termination of the travel agencies' right to issue air tickets on American and American Eagle should they refuse to pay the Debit Memos. Plaintiffs allege that the American defendants have engaged in this pattern of conduct of issuing illegal Debit Memos on a daily basis since the beginning of the Class Period. In sum, Plaintiffs have alleged sufficient facts that demonstrate that defendants have made uniform misrepresentations to all Class members, including Plaintiffs.

In terms of the American Defendants' second argument, this case does not require the trier of fact to separately decide whether or not each Debit Memo was valid or invalid. The case turns on an inquiry into American's alleged conduct of using the Debit Memos to extort monies from class members. The inquiry will center on class-wide issues such as whether American's alleged tariff rules prohibit passengers from buying the lowest

priced tickets to get to their destinations and, if so, whether American had any contractual or other legal basis that would allow it to collect damages from the travel agents for alleged violations by passengers of its alleged tariff rules. The court may find that the circumstances surrounding the Debit Memos were improper, thus precluding the need to focus on the individual circumstances of any given memo.

The American Defendants' third argument raises the question whether American's specific intent is an individualized issue that may prevent class certification. The Court finds that it is not. No case law points to such a proposition. In addition, American's specific intent to commit fraud and extortion may be proven either by direct or circumstantial evidence. For example, American's intent may established by demonstrating that American knew that it was engaged in a deceptive and manipulative scheme to extort money from members of the class, as Plaintiffs have alleged Plaintiffs' allegations that American operated a common fraudulent scheme against all class members eliminates any need for individualized proof of intent. *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 786 (9th Cir.1996).

Likewise, Plaintiffs' reliance on the American Defendants' alleged misrepresentations does not pose as a barrier to class certification. First, since Plaintiffs' RICO claims are based on both extortion and mail and wire fraud, *Westways World Travel v. AMR Corp.*, 182 F.SUPP.2d at 956–58, to the extent that the RICO claims proceed on the basis of the extortion theory, there is no issue of reliance Plaintiffs' unjust enrichment and breach of contract claims also do not require proof of reliance. Should the issue of reliance need to be reached in this case, the Court has several procedural options for handling the case, such as subclassification, bifurcation, and reconsideration of class certification. *In re United Energy Corp.*, 122 F.R.D. 251, 256 (C.D.Cal.1988).

Next, even if Plaintiffs proceed solely on the basis of a fraud theory, the RICO claims would still be suitable for class action treatment. Class-wide reliance and injury may be established by virtue of payments class members made to American. *Sandwich Chef of Texas, supra*, 202 F.R.D. at 501(proof of reliance may be established by circumstantial evidence), *Chisolm v. TranSouth Financial Corp.*, 194 F.R.D. 538, 560 (E.D.Va.2000) (RICO class members may establish that they detrimentally relied "in some way" on the fraudulent mailing by alleging they made deficiency payments on their loans), *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 338 (N.D.Ill.1997) (when fraud us perpetrated in a uniform manner ... courts typically hold that individual reliance questions do not predominate). Here, Plaintiffs and each Class member relied on Defendants' scheme in paying the Debit Memos. According to the allegations in the SAC, there is very little difference between members of the Class because they were all defrauded in essentially the same way based on American's assertions regarding the validity of the Debit Memos and its right to collect.

The American Defendants' contentions with regard to Sabre do not present a barrier to class certification because the Court may employ the procedural options mentioned above. *In re United Energy Corp., supra*, 122 F.R.D. at 256.

Finally, as to the breach of contract claim, the issue whether Plaintiffs and Class members performed the ARC contract does not pose an obstacle to certification. Before the Court has to determine whether or not any Class members may have knowingly assisted a passenger in violating American's rules, the validity and enforceability of those rules, and a determination that there is a contractual or legal basis for precluding passengers from making choices respecting how they will utilize the tickets they purchase and a corresponding obligation on travel agents to police passengers, must be established.

To summarize, the predominate common questions of law and fact here are whether the American Defendants conspired to effectuate an extortion scheme, whether the issuance of Debit Memos to travel agents and defendants' threats to cancel travel agents' accreditation or to charge their bond if they did not pay the Debit Memos constitute extortion, whether the common omis-

sions and misrepresentations made by the American Defendants were material, whether the American Defendants breached their contract with Plaintiffs in demanding payment of the Debit Memos, and whether the American Defendants have been unjustly enriched as a result of the collection of penalties from travel agents who have been issued Debit Memos. Plaintiffs have alleged that Defendants acted in a virtually uniform manner towards all Class members with respect to the alleged scheme to force Plaintiffs and the other Class members to pay for alleged tariff violations by passengers who purchased tickets for air travel from the members of the travel agent class. Where the SAC alleges a "common course of conduct" of misrepresentations, omissions and other wrongdoing that allegedly affected all the class members in the same manner, common questions predominate. *Blackie, supra,* 524 F.2d at 905–08.

■■■ "The mere presence of potential individual issues does not defeat the predominance of common questions." *McFarland v. Memorex,* 96 F.R.D. 357, 363–64 (N.D.Cal.1982). While questions may exist here as to individual class members, those questions may never have to be reached if the predominate common elements are not first established. Moreover, the Court retains a variety of procedural devices for handling individual member issues at a later date. Questions such as specific intent, reliance, and contract performance, are properly dealt with at such time through a variety of procedural devices such as subclassification, bifurcation, and reconsideration of class certification. *Schwartz v. Harp,* 108 F.R.D. 279, 281 (C.D.Cal.1985).

For the above reasons, the Court finds that Plaintiffs have satisfied Rule 23(b)(3)'s predominance requirement as to the claims against the American Defendants.

b. *Common Issues of Law and Fact Predominate in Plaintiffs' Claims Involving ARC*

■■■ ARC first argues that because Plaintiffs have failed to prove standing, common issues cannot predominate in this case. ARC contends that the fact that Plaintiffs have

suffered no injury at the hands of ARC demonstrates that the questions of breach of contract and injury are individualized issues that will predominate over any common issue Plaintiffs might identify.

ARC further argues that it is not apparent that Plaintiffs can demonstrate any common issue of law and facts with respect to their claims against ARC because the putative class, travel agents "who have or will be required to pay monies to American and American Eagle for Debit Memos," does not necessarily constitute a class of agents who were injured by ARC. This is because, ARC argues, issuance of a Debit Memo by an airline does not automatically lead to any action by ARC.

Along these lines, ARC maintains that the determination whether ARC engaged in any of the conduct alleged by Plaintiffs (revocation of the accreditation of travel agents who received an American Debit Memo, threats of loss of accreditation to travel agents who fail to pay an American Debit Memo, the drawing upon of a bond or letter of credit of any such travel agent) requires an individual inquiry into each class member's circumstances. ARC asserts that Plaintiffs have offered no class-wide evidence of any action taken by ARC toward all travel agents who received Debit Memos from American.

Finally, ARC argues that even if ARC did act against some of the travel agents, individual investigations would have to be undertaken to determine whether ARC's conduct related to a valid or improper Debit Memo.

ARC's arguments fail for four reasons. First, as concluded earlier, Plaintiffs do have standing as to their claims against ARC. Second, ARC's arguments ignore the allegations in Plaintiffs' SAC which charge all of the Defendants, including ARC, with a massive common scheme that resulted in unjust enrichment for all Defendants and affected all class members. Third, Plaintiffs contract claim involves the interpretation of a common contract and does not require individualized proof. *Winkler v. DTE, Inc.,* 205 F.R.D. 235 (D.Ariz.2001), *Durant v. Servicemaster Co.,* 208 F.R.D. 228, 232–33 (E.D.Mich.2002). Finally, the determination of ARC's liability on

the unjust enrichment claim can be made from common class-wide proof. *Hubler Chevrolet, Inc. v. General Motors Corp.*, 193 F.R.D. 574 (S.D.Ind.2000). Therefore, the Court concludes that Plaintiffs have satisfied Rule 23(b)(3)'s predominance requirement as to the claims against ARC.

### 2. *Superiority*

■ Rule 23(b)(3) also requires that the court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider the following: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, (D) the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3). These factors, however, are not exhaustive. *Kamm v. California City Development Co.*, 509 F.2d 205, 212 (9th Cir.1975). Determining whether class certification is proper is within the discretion of the trial court. *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir.1977).

■ Here, no one member of the Class has an interest in controlling the prosecution of the action because the claims of all members of the Class are virtually identical. No other litigation concerning the controversy has already been commenced by or against members of the class and the apparent nationwide geographical dispersion of the Class members makes it desirable that litigation of the claims involved be concentrated in a single forum. Moreover, there is no reason to believe that the case will present any significant or unusual difficulties in the management of the litigation as a class action. Thus, the Court holds that Plaintiffs meet the superiority requirement.

### H. Certification Under Rule 23(b)(2)

Under Rule 23(b)(2), a class is appropriately certified where defendants have acted or refused to act in a manner generally applicable to the class, rendering injunctive relief or declaratory relief appropriate to the class as a whole: "Generally applicable," as used in Rule 23(b)(2) has been interpreted to mean that the party opposing the class "has acted in a consistent manner towards members of the class so that his actions may be viewed as part of a pattern of activity, or has established or acted pursuant to a regulatory scheme common to all class members." WRIGHT, MILLER & KANE, *supra*, § 1775, at 449.

■ Plaintiffs have alleged that defendants have acted in a manner generally applicable to the class. Plaintiffs' SAC sets forth facts alleging that the American Defendants and ARC engaged in a common scheme to collect money from Plaintiffs by threatening to terminate the contractual right of Plaintiffs to issue airline tickets for American and American Eagle if they did not pay Debit Memos, which were issued by American with the assistance of the other defendants, for purported "tariff" violations by passengers who purchased airline tickets from Plaintiffs. These allegations by Plaintiffs are sufficient to satisfy Rule 23(b)(2)'s requirement that defendants acted in a manner generally applicable to the class.

The second prerequisite to relief under Rule 23(b)(2) is that the Plaintiffs must seek final injunctive or declaratory relief against the party opposing the class. WRIGHT, MILLER & KANE, *supra*, § 1775, at 457.

The defendants make several arguments as to this aspect of Rule 23(b)(2). First, the American Defendants contend that Plaintiffs cannot seek certification under 23(b)(2) for their breach of contract claim because the "basis of injunctive relief in federal courts is irreparable harm and inadequacy of legal remedies." *Los Angeles Memorial Coliseum Comm. v. National Football League*, 634 F.2d 1197, 1202 (9th Cir.1980). The American Defendants argue that Plaintiffs have not made any showing that any damages they have suffered are irreparable and could not be addressed through monetary damages.

However, whether or not Plaintiffs can show irreparable harm is an issue on the merits which is not suited for determination at this time. *Johnson v. Aronson Furniture Co.*, 1998 WL 641342 at *9 (N.D.Ill.1998).

■ Moreover, the Ninth Circuit has held that even if monetary damages are sought, certification under Rule 23(b)(2) may still be proper, as long as the request for monetary damages is incidental to the request for injunctive or declaratory relief. *Molski v. Gleich*, 307 F.3d 1155, 1165 (9th Cir.2002), *Probe v. State Teachers' Retirement System*, 780 F.2d 776, 780 (9th Cir. 1986). The restriction on certification under Rule 23(b)(2) to claims involving incidental damages is "necessary to comport with basic due process requirements. Because members of a Rule 23(b)(2) class do not have the right to opt-out ... if the action involves 'substantial monetary damages' maintenance of a mandatory Rule 23(b)(2) class is inappropriate and violative of minimum due process." *Molski, supra*, 307 F.3d at 1165.

Addressing this issue, the American Defendants and ARC maintain that Plaintiffs are precluded from seeking class certification under Rule 23(b)(2) because the relief Plaintiffs seek is primarily, not incidentally, monetary damages.

It appears that the Ninth Circuit has not defined a clear test for when monetary damages are the primary remedy sought, or incidental to a request for injunctive or declaratory relief. However, some guidance may be had from *Kanter v. Warner–Lambert Co.*, 265 F.3d 853 (9th Cir.2001). In *Kanter*, while discussing its denial of a request for injunctive relief as the basis for federal jurisdiction in a class action, the Ninth Circuit commented that injunctive relief did not appear to be the primary objective of that litigation. *Id.*, at 860. In *Kanter*, Plaintiffs sought monetary compensation for consumers who relied on Defendants' misleading advertising. The Court noted that Plaintiffs also asked the Court to enjoin Defendants from engaging in the conduct complained of, and commented: "But if Plaintiffs succeed in obtaining a significant award of monetary damages, they will likely accomplish what we believe to be their essential goal in this litiga-

tion without the added spur of an injunction." *Id.*

The reasoning articulated in *Kanter* does not appear to apply here. Although the Plaintiffs in this case seek both monetary damages and equitable relief, the inference cannot be drawn that Plaintiffs' obtaining a damages award will result in defendants ceasing to issue Debit Memos for improper purposes.

Further guidance may be found from the Fifth Circuit, which has provided the most comprehensive description of the primary/incidental analysis:

> By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief.

> Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established ... That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case, it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations.

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir.1998) (citations omitted).

■ Analysis of the instant case reveals that Plaintiffs' request for monetary damages is incidental to their demand for equitable relief. The gravamen of Plaintiffs' complaint is that defendants had no contractual or other legal basis for issuing the subject Debit Memos and pursuing collection efforts thereafter. This issue requires a declaration of the invalidity and unenforceability of the alleged contractual basis for American's actions. Should this issue be decided in favor

of Plaintiffs, Plaintiffs' damages will flow directly and such damages will not require inquiry into new, nor substantial, nor complex determinations regarding each Plaintiff's individual case. Thus, it appears that the fact that Plaintiffs have also asserted damages claims for themselves and other class members who were wrongly required to pay monies to the Defendants is incidental to Plaintiffs' equitable claim for relief.

The American Defendants make two final arguments contesting the propriety of certification under Rule 23(b)(2).

First, the American Defendants assert that lawsuits involving non-civil rights federal statutory claims and individual-specific damages are not suitable for class certification under Rule 23(b)(2). However, although subdivision (b)(2) was added to Rule 23 in 1966 primarily to facilitate the bringing of class actions in the civil rights area, the rule is not limited to actions involving only civil and constitutional rights. WRIGHT, MILLER & KANE, *supra,* § 1775, at 470, 483.

Finally, the American Defendants argue that Plaintiffs cannot request class certification on their claim for injunctive relief because in the Ninth Circuit, injunctive relief is not available to a private plaintiff in a civil RICO action. *Oregon Laborers–Employers Health & Welfare Trust Fund v. Philip Morris, Inc.,* 185 F.3d 957, 967–68 (9th Cir.1999). As to this argument, the American Defendants are correct in that under the Ninth Circuit, injunctive relief is not available to a private plaintiff in a civil RICO action. However, there is no legal barrier to obtaining declaratory relief under the statute. *In re Consolidated "Non–Filing Insurance" Fee Litig.,* 195 F.R.D. 684, 695 (M.D.Ala.2000) (stating that plaintiff class can obtain a declaration that defendants' conduct violated RICO).

For the above reasons, the Court concludes that certification under Rule 23(b)(2) is appropriate for declaratory relief as to Plaintiffs' RICO claims and both injunctive and declaratory relief as to Plaintiffs' contract and unjust enrichment claims.

## III. DISPOSITION

Accordingly, IT IS ORDERED that

(1) Plaintiffs' Motion for Class Certification is granted,

(2) This action is hereby certified and shall be maintained as a class action, defined as hereinabove stated,

(3) The named Plaintiffs, Westways World Travel, Inc. and Sundance Travel Service, an Arizona Partnership, are hereby designated as the representatives of the Class, and

(4) The attorneys of record for the named class Plaintiffs in this action are designated as counsel for the Class.